UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETRO S.,

    Plaintiff,

 v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 2:19-CV-1620-DWC

ORDER

I.  INTRODUCTION

  Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

  After considering the record, the Court concludes the administrative law judge ("ALJ") erred by failing to give specific and legitimate reasons for rejecting the opinions of examining psychologist Holly Petaja, Ph.D. Had the ALJ properly considered Dr. Petaja's opinions, the ALJ may have found Plaintiff disabled or may have included additional limitations in the residual

functional capacity assessment. This matter is therefore reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for SSI in May 2016, alleging disability as of June 5, 2002. *See* Dkt. 8, Admin. Record ("AR") 67, 164–74. The application was denied on initial administrative review, and on reconsideration. *See* AR 67–78, 80–92. A hearing was held before ALJ Larry Kennedy on May 17, 2018. *See* AR 41–65. In a decision dated September 17, 2018, the ALJ determined Plaintiff to be not disabled. *See* AR 24–35. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See* AR 1–3; 20 C.F.R. § 416.1481.

In Plaintiff's opening brief, he maintains the ALJ erred by (1) rejecting the opinions of Dr. Petaja; and (2) failing to address statements from Melissa Hernandez, MHP, CDPT, and Ivko Pejovic, LMHC, MHP. Dkt. 10, p. 1.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## IV. DISCUSSION

**A.    Whether the ALJ Erred in Rejecting Dr. Petaja's Opinions**

Plaintiff contends the ALJ erred in rejecting examining psychologist Dr. Petaja's opinions. Dkt. 10, pp. 3–13. Dr. Petaja issued two opinion statements, one after examining

Plaintiff in August 2016, and another after examining Plaintiff in January 2018. *See* AR 279–85, 544–48. The ALJ treated each statement separately, and the Court will do the same.

        1.      <u>The ALJ Erred in Rejecting Dr. Petaja's August 2016 Opinions</u>

Dr. Petaja examined Plaintiff on August 2, 2016. *See* AR 279–85. Dr. Petaja opined that Plaintiff had marked limitations in his ability to perform a number of basic work activities, including the ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule; adapt to changes in a routine work setting; and maintain appropriate behavior in a work setting. *See* AR 281.

The ALJ gave Dr. Petaja's August 2016 opinions little weight. AR 32. The ALJ reasoned that Dr. Petaja's opinions were inconsistent with the medical evidence and Dr. Petaja's own examination findings. *Id.* The ALJ further reasoned that Dr. Petaja relied heavily on Plaintiff's self-reports, and "did not review the longitudinal treatment records prior to offering her opinions." *Id.*

The ALJ erred in rejecting Dr. Petaja's opinions as inconsistent with the medical evidence. An ALJ may only reject the opinions of an examining doctor when contradicted if the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d at 1035, 1043 (9th Cir. 1995)). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*,

100 F.3d 1462, 1464 (9th Cir. 1996)). Here, the ALJ merely stated that Dr. Petaja's August 2016 opinions were "not consistent with or supported by the longitudinal evidence of record." AR 32. This was not a specific enough reason to reject Dr. Petaja's August 2016 opinions.

The ALJ also erred in rejecting Dr. Petaja's August 2016 opinions as inconsistent with her own exam findings. The ALJ gave two examples to show his reasoning, but neither survives scrutiny. First, the ALJ found inconsistent Dr. Petaja's opinion that Plaintiff was markedly limited in his ability to persist in a normal work day or week and her exam finding that Plaintiff arrived on time for his appointment. *See* AR 32. But the ability to arrive on time for one medical appointment that almost certainly lasted less than a full work day does not refute Dr. Petaja's opinion that Plaintiff was markedly limited in his ability to work a full week of normal work days.

Second, the ALJ found inconsistent Dr. Petaja's opinion that Plaintiff had marked social functioning limitations, but had adequate hygiene and attire, spoke at a normal rate, rhythm, and volume, and was polite and cooperative during the exam. *See id.* But again, the ability to present oneself in a reasonable manner to a medical provider specifically trained to interact with individuals with mental limitations does not refute a finding that Plaintiff was, for example, markedly limited in his ability to communicate and perform effectively in a normal work setting. *Cf.* 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016) ("Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week."). The ALJ thus erred in rejecting Dr. Petaja's August 2016 opinions as inconsistent with her exam findings.

The ALJ next erred in rejecting Dr. Petaja's August 2016 opinions for being too heavily based on Plaintiff's self-reports. Psychological evaluations may appear to rely heavily on the patient's self-reports, especially compared to evaluation in other medical fields, "[b]ut such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "'[U]nlike a broken arm, a mind cannot be x-rayed.'" *Id.* (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Dr. Petaja did not just rely on Plaintiff's self-reports, but performed a clinical interview and mental status examination, both of which "are objective measures and cannot be discounted as a 'self-report.'" *Id.* The ALJ thus erred in rejecting Dr. Petaja's opinions as too heavily based on Plaintiff's self-reports.

Finally, the ALJ erred in rejecting Dr. Petaja's opinions on the basis that she did not review any medical records before forming her opinions. Although a doctor's knowledge of the overall record is important, the ALJ did not point to any records Dr. Petaja failed to review or explain how they might have changed her opinions. And, as a practical matter, Plaintiff came to the United States from Ukraine roughly five months before Dr. Petaja saw him, so there are very few medical records available that Dr. Petaja even could have reviewed before issuing her opinions. The ALJ's reasoning here was not specific, and thus the ALJ erred in rejecting Dr. Petaja's August 2016 opinions.

### 2. The ALJ Erred in Rejecting Dr. Petaja's January 2018 Opinions

Dr. Petaja examined Plaintiff again on January 31, 2018. *See* AR 544–48. Dr. Petaja's opinions remained largely the same as her 2016 opinions, except she found Plaintiff moved from markedly limited to severely limited in his ability to "[p]erform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances without special supervision," and "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." AR 546.

The ALJ gave Dr. Petaja's January 2018 opinions little weight. AR 32–33. The ALJ gave the same reasons for rejecting Dr. Petaja's January 2018 opinions as he gave for rejecting Dr. Petaja's August 2016 opinions. *See* AR 32–33. Those reasons fail based on the same analysis given above. *See supra* Part IV.A.1.

The ALJ gave one additional reason for rejecting Dr. Petaja's January 2018 opinions: she is not an expert on social security-specific disability evaluations. *See* AR 33. Once again, the ALJ's reasoning is too conclusory. An ALJ may certainly consider a medical expert's knowledge of the standards for disability in the social security context, but the ALJ still must provide some explanation for how an alleged lack of knowledge detracts from the expert's medical opinion. *See Garrison*, 759 F.3d at 1012–13. The ALJ failed to provide any explanation, and therefore failed to give any specific and legitimate reasons for rejecting Dr. Petaja's January 2018 opinions. The ALJ consequently erred.

**B.     Whether the ALJ Erred by Failing to Address Statements from Ms. Hernandez and Mr. Pejovic**

Plaintiff contends the ALJ failed to address statements from treating mental health counselors Ms. Hernandez and Mr. Pejovic. Dkt. 10, pp. 2–3. Ms. Hernandez performed an intake assessment of Plaintiff for mental health services on May 17, 2016. *See* AR 351–60. In a section titled "[f]unctional status," Ms. Hernandez reported that, among other things, Plaintiff "is unable to work and struggles with interpersonal relationships due to mental health symptoms." AR 351–52. Mr. Pejovic was Plaintiff's mental health counselor, seeing him weekly from December 2016 through March 2018. *See* AR 430–68, 481–530, 549–699. He completed intake

assessment forms on April 28, 2017, October 4, 2017, and November 8, 2017, which contained the same language as Ms. Hernandez's assessment, that Plaintiff "is unable to work and struggles with interpersonal relationships due to mental health symptoms." *See* AR 523–24, 629–30, 647–48.

It is unclear from the record whether the statements from Ms. Hernandez and Mr. Pejovic were intended as medical opinions. Nonetheless, the ALJ did not address them. Because this matter is being remanded for reevaluation of Dr. Petaja's opinions, the ALJ should consider the statements from Ms. Hernandez and Mr. Pejovic on remand.

**C.    Scope of Remand**

Plaintiff asks the Court to remand this matter for further administrative proceedings. Dkt. 10, p. 13. The Court agrees that this is the appropriate remedy. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). On remand, the ALJ shall reevaluate Dr. Petaja's opinions, and consider the statements from Ms. Hernandez and Mr. Pejovic. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

V.    CONCLUSION

Based on the foregoing reasons, the Court finds that the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 5th day of March, 2020.

David W. Christel
United States Magistrate Judge